[S. F. No. 15137. In Bank.—March 27, 1935.]

MATSON NAVIGATION COMPANY (a Corporation) et al., Petitioners, v. STATE BOARD OF EQUALIZATION et al., Respondents.

Brobeck, Phleger & Harrison for Petitioners.

U. S. Webb, Attorney-General, H. H. Linney, Deputy Attorney-General, Dixwell L. Pierce and Frank M. Keesling for Respondents.

THE COURT.—Petitioners bring this proceeding under section 30 of the Bank and Corporation Franchise Tax Act (Stats. of 1929, p. 19), as such section was amended in 1933. (Stats. of 1933, p. 692.) This is apparently the first case to reach this court under the procedure therein provided. That section, as amended, provides that any corporate taxpayer dissatisfied with the assessment levied against it by the franchise tax commissioner, and after having unsuccessfully appealed to the state board of equalization, within sixty days of the decision of that board, may apply to this court for a writ of *certiorari* or review, for the purpose of testing the lawfulness of the order of the board; that in such proceeding the cause is to be heard on the record of the board as certified by it; that no new or additional evidence may be taken in this court; that the findings and conclusions of the board are final on all questions of fact; that this court is limited in its review to determining whether the board has regularly pursued its authority, including the determination as to whether the state or federal Constitution has been violated; that upon the hearing this court shall enter judgment either affirming or setting aside the order or decision of the board.

The facts giving rise to the present controversy are as follows:

Petitioners are domestic corporations engaged in both intrastate and interstate or foreign commerce. The Matson Navigation Company, in addition to certain purely intrastate

activities, is engaged in the business of transporting passengers and freight between ports on the Pacific Coast, including California ports, and ports in Hawaii. The Oceanic Steamship Company, in addition to certain purely intrastate activities, is engaged in the business of transporting passengers and freight between ports on the Pacific Coast, including California ports, and ports in Hawaii, the South Seas, Australia and New Zealand. The Matson Terminals, Inc., is interested in this proceeding only in so far as it is a party to a consolidated return. No portion of the tax here under attack is apportionable to this company. All of the transportation activities of the two other petitioners are interstate or foreign.

The tax here under attack is that imposed for the year 1931, measured by the net income of these companies, as provided in the act, for the preceding year. These companies, in filing their return for 1931, omitted from their net income all portions thereof derived from interstate or foreign commerce. They paid a tax of $12,845.30, computed by applying to their net income, derived solely from intrastate commerce, the statutory rate. In 1930, petitioners made a net income of $2,526,148.22 from their interstate or foreign commerce, a considerable portion of which originated in California. This was entirely omitted from their 1931 return. The franchise tax commission, after notice and a hearing, imposed an additional tax of $19,637.71, which is the tax involved in this proceeding. The commissioner computed the additional assessment by allocating 22.2 per cent of the total net income derived from interstate and foreign commerce to California, that percentage correctly representing the proportion of the net income derived from business originating in this state. In arriving at this result, the commissioner allocated to income from business done in this state that portion of petitioners' income from its transportation business done within and without the state which the amount of the business originating in this state bore to the total business done.

Petitioners concede that the percentage adopted by the commissioner correctly represents that portion of their net income from interstate or foreign commerce derived from the transportation of passengers and freight originating in California. In a comprehensive opinion, the State Board

of Equalization sustained the commissioner, holding that the state has the power to impose a franchise tax upon domestic corporations measured in part by income derived from that proportion of their net income derived from business done in interstate or foreign commerce originating in this state, and that the tax act here involved provides for such a tax.

Petitioners contend that the Franchise Tax Act, properly construed, does not include in its tax base income derived from interstate or foreign commerce. In the event the act be construed to include such income, then petitioners contend that the additional assessment is unconstitutional and void in that it imposes a tax on interstate and foreign commerce contrary to the commerce clause of the federal Constitution; that it deprives petitioners of the equal protection of the laws and deprives them of their property without due process; that the assessment is also void for lack of uniformity in violation of section 11 of article I of the state Constitution, and that it also violates section 15 of article XII of the state Constitution in that it permits foreign corporations similar to petitioners to engage in business in this state on more favorable terms than domestic corporations. All of these contentions are without merit, as will hereinafter appear.

The first major contention of petitioners is that the Franchise Tax Act does not expressly include net income from interstate or foreign commerce and that the act cannot and should not be interpreted as imposing a tax measured by income derived from such business, even though such a tax is within the power of the state to impose. The problem thus presented is solely one of interpretation, turning solely upon the provisions of the act.

The act does not specifically provide that income from business done in interstate or foreign commerce originating in this state shall be included in the measure of the tax. Such specific provision is not necessary, however, if the language employed is broad enough to and actually does include such income, and if such income is not otherwise excluded. It is our opinion that the provisions of the act include in the measure of the tax all income, however earned, unless such income is specifically excluded, and that since there is no provision specifically excluding the type of income here involved, it is necessarily included.

Section 4 of the act, as it read in 1931, provides "Every financial, mercantile, manufacturing and business corporation doing business within the limits of this state, of the classes referred to in subdivision 2 (a) of section sixteen of article thirteen of the constitution of this state, shall annually pay to the state, for the privilege of exercising its corporate franchises within this state, a tax according to or measured by its net income . . . at the rate of four per centum . . . " Under this section, considered alone, every corporation of the type classified that does business in this state would be required to pay a tax measured by its *entire* net income, regardless of source, but it is important to note that the tax is imposed only on those corporations referred to in subdivision 2 (a), of section 16, article XIII, of the Constitution. That section, as it read prior to the 1933 amendments, refers to those corporations doing business in this state which are subject to be taxed pursuant to subdivision (d) of section 14 of article XIII of the Constitution. Prior to the adoption of the Corporation Franchise Tax Act here involved, it was held that foreign corporations engaged *solely* in interstate commerce were not subject to the tax imposed by section 14 (d). (*People* v. *Pacific Alaska Steamship Co.*, 182 Cal. 202 [187 Pac. 742].) Thus the classification found in section 4 of the act here involved, as above quoted, necessarily excludes from the tax foreign corporations doing business in this state but engaged solely in interstate commerce. This is quite important, because if section 4 should be interpreted to include such corporations, the act, as to such corporations, would be unconstitutional. The United States Supreme Court has consistently held that a state may not impose a franchise tax, whether measured by net income or otherwise, upon foreign corporations doing business within the state, if the foreign corporations' business is exclusively interstate in character. (*Alpha Portland Cement Co.* v. *Massachusetts*, 268 U. S. 203 [45 Sup. Ct. 477, 69 L. Ed. 916, 44 A. L. R. 1219]; *Anglo-Chilean Nitrate Sales Co.* v. *Alabama*, 288 U. S. 218 [53 Sup. Ct. 373, 77 L. Ed. 710].)

However, although section 4, by its classification, excludes from its provisions foreign corporations doing business in this state and engaged solely in interstate commerce, it includes within its terms foreign corporations engaged

in both interstate and intrastate commerce, as well as domestic corporations also so engaged. If section 4 were the only provision of the act on the subject, such corporations would be required to pay a franchise tax for the privilege of engaging in intrastate business in this state, measured by their entire net income, however acquired. However, the act contains other provisions which limit the operation of section 4, above quoted.

Section 5 of the act, as it read in 1931, defines the terms "doing business" as "any transaction or transactions in the course of its business by a corporation created under the laws of this state, or by a foreign corporation qualified to do or doing intrastate business in this state . . . " Section 10 of the act, as it read in 1931, provides: "If the entire business of the bank or corporation is done within this state, the tax shall be according to or measured by its entire net income; and if the entire business of such bank or corporation is not done within this state, the tax shall be according to or measured by that portion thereof which is derived from business done within this state." The section then provides for various formulae whereby the portion of the net income attributable to business done within this state may be determined, and expressly provides that whatever formula is used it must be "fairly calculated to assign to the state the portion of net income reasonably attributable to the business done within this state and to avoid subjecting the taxpayer to double taxation". The formula adopted by the commissioner in the present case is well calculated to accomplish the purpose provided in the portion of section 10 last quoted.

We think that by section 4 of the act as limited by sections 5 and 10, as above quoted, the act was intended to and by its terms does impose on the corporations of the type mentioned, for the privilege of exercising their corporate franchises within this state, the tax therein provided, whether such corporation is a foreign or domestic corporation, and whether engaged in interstate or foreign commerce or not, so long as such corporation is doing some intrastate business as well. We are likewise of the opinion that the act clearly, without ambiguity, imposes on foreign and domestic corporations of the classes mentioned, when they are engaged in both intrastate and interstate commerce, for

the privilege of engaging in intrastate commerce, a franchise tax measured by or according to their net income, and that the act provides in such cases that income from interstate or foreign commerce shall be included in measuring the tax to the extent limited in the act.

 Petitioners' contention that the words "derived from business done within this state", found in section 10, must be construed to mean business solely done in intrastate commerce, is untenable. When standing alone, such words may be capable of the interpretation contended for (*Pacific Express Co.* v. *Seibert*, 142 U. S. 339 [12 Sup. Ct. 250, 39 L. Ed. 1035]), but when read with the rest of section 10 and with sections 4 and 5, they cannot be so interpreted without doing violence to the language used and without imposing limitations not therein contained. Section 10, in the interests of avoiding double taxation, does limit section 4 to the extent of excluding from the measure of the tax income from business done entirely outside the state, but reasonably and properly construed, there is nothing in the section which even by implication excludes from the measure of the tax imposed for the privilege of exercising the corporate franchise to do intrastate business, income from interstate or foreign commerce which is reasonably attributable to business done within this state.

 The above interpretation of the act brings us to the next major question presented, viz., Is the tax here involved, as interpreted above, in violation of the commerce clause and the equal protection and due process clauses of the federal Constitution? The contentions made by petitioners on this point are not new. They have been made in many cases and have been completely answered by several decisions of the United States Supreme Court. It is well settled that any tax that is a direct burden on interstate commerce is unconstitutional. Thus, as already stated, a franchise tax measured by net income cannot be imposed on a foreign corporation engaged solely in interstate commerce (*Alpha Portland Cement Co.* v. *Massachusetts, supra*), because such tax attempts to directly burden such commerce. Likewise, a *gross receipts tax* on a foreign corporation engaged in both interstate and intrastate commerce is unconstitutional as a direct burden on interstate commerce. (*United States Glue Co.* v. *Oak Creek*, 247 U. S. 321 [38 Sup. Ct. 499, 62

L. Ed. 1135, Ann. Cas. 1918E, 748].) On the other hand, it has been held that a tax upon net income of a foreign or domestic corporation engaged in both interstate and intrastate commerce, where the tax is imposed upon all income earned within the state, including income derived from transactions in interstate or foreign commerce, does not amount to burdening interstate or foreign commerce, and is valid. (*United States Glue Co.* v. *Oak Creek, supra; Peck & Co.* v. *Lowe,* 247 U. S. 165 [38 Sup. Ct. 432, 62 L. Ed. 1049].) In the Glue Company case, *supra,* the court pointed out that a tax that affects only indirectly the profits or returns from interstate commerce is valid, and that the franchise of a corporation is property which can be taxed, and then stated (p. 328):

"The difference in effect between a tax measured by gross receipts and one measured by net income, recognized by our decisions, is manifest and substantial, and it affords a convenient and workable basis of distinction between a direct and immediate burden upon the business affected and a charge that is only indirect and incidental. A tax upon gross receipts affects each transaction in proportion to its magnitude and irrepective of whether it is profitable or otherwise. Conceivably it may be sufficient to make the difference between profit and loss, or to so diminish the profit as to impede or discourage the conduct of the commerce. A tax upon the net profits has not the same deterrent effect, since it does not arise at all unless a gain is shown over and above expenses and losses, and the tax cannot be heavy unless the profits are large. Such a tax, when imposed upon net incomes from whatever source arising, is but a method of distributing the cost of government, like a tax upon property, or upon franchises treated as property; and if there be no discrimination against interstate commerce, either in the admeasurement of the tax or in the means adopted for enforcing it, it constitutes one of the ordinary and general burdens of government, from which persons and corporations otherwise subject to the jurisdiction of the States are not exempted by the Federal Constitution because they happen to be engaged in commerce among the States."

Petitioners concede that a state, under the above authorities, can impose a net income tax and impose the tax on

income from interstate commerce, but contend that the principles applicable to a state's power to impose franchise taxes measured by net income are entirely different from the principles applicable to a state's power to impose taxes upon net income. There are some differences between the two situations, it is true, but such differences do not affect the situation here presented. When a foreign corporation comes into this state and does some intrastate business, as well as interstate business originating here, it cannot be taxed for the privilege of engaging in interstate commerce, but it may be taxed for the privilege of engaging in intrastate commerce. In fixing that tax, the state may require the corporation to pay for that privilege a tax measured by its net income attributable to business done in this state, regardless of whether the income is derived from intrastate business or from business done in interstate or foreign commerce. The cases of *Underwood Typewriter Co.* v. *Chamberlain*, 254 U. S. 113 [41 Sup. Ct. 45, 65 L. Ed. 165], and *Bass, Ratcliff & Gretton, Ltd.*, v. *State Tax Commission*, 266 U. S. 271 [45 Sup. Ct. 82, 69 L. Ed. 282], squarely support this conclusion. The following language from the Underwood case, *supra,* page 120, is pertinent:

"A tax is not obnoxious to the commerce clause merely because imposed upon property used in interstate commerce, even if it takes the form of a tax for the privilege of exercising its franchise within the state. (*Postal Telegraph Co.* v. *Adams*, 155 U. S. 688, 695 [15 Sup. Ct. 268, 39 L. Ed. 311].) This tax is based upon the net profits earned within the state. That a tax measured by net profits is valid, although these profits may have been derived in part, or indeed mainly, from interstate commerce, is settled. (*United States Glue Co.* v. *Oak Creek*, 247 U. S. 321 [38 Sup. Ct. 499, 62 L. Ed. 1135, Ann. Cas. 1918E, 748]; *Shaffer* v. *Carter*, 252 U. S. 37, 57 [40 Sup. Ct. 221, 64 L. Ed. 445]; compare *Peck & Co.* v. *Lowe*, 247 U. S. 165 [38 Sup. Ct. 432, 62 L. Ed. 1049].) Whether it be deemed a property tax or a franchise tax, it is not obnoxious to the commerce clause."

Since, under the federal Constitution, the state may impose a franchise tax, measured by income from business done within the state derived from interstate or intrastate commerce, upon foreign corporations doing some intrastate business, it likewise has at least equal powers as to domestic corporations.

The above analysis completely disposes of petitioners' arguments on the constitutional point under discussion and also fully disposes of petitioners' argument that under the act foreign corporations similar to petitioners (foreign corporations doing some intrastate and some interstate business) are permitted to transact business here on more favorable terms than petitioners. As we have seen, the act makes no distinction, but treats both classes alike. In this connection, it is worthy of mention that the state, so far as domestic corporations such as petitioners are concerned, has seen fit to impose a tax more limited in extent than it could have levied. ■ Unquestionably the state has the power to tax the *entire* net income of a domestic corporation, from whatever source derived (with certain possible exceptions not here involved, see *Lynch* v. *People,* 293 U. S. 52 [55 Sup. Ct. 16, 79 L. Ed. (Adv. Opn.) 116]), including its total income from interstate commerce, whether originating in this state or not. (*Lawrence* v. *State Tax Commission,* 286 U. S. 276 [52 Sup. Ct. 556, 76 L. Ed. 1102, 87 A. L. R. 374] ; *Cream of Wheat Co.* v. *Grand Forks County,* 253 U. S. 325 [40 Sup. Ct. 558, 64 L. Ed. 931] ; see, also, *Schwab* v. *Richardson,* 263 U. S. 88 [44 Sup. Ct. 60, 68 L. Ed. 183].) California, however, in the interest of imposing on domestic corporations engaged in both interstate and intrastate commerce the same tax that is imposed on foreign corporations similarly situated, has limited the tax to that portion of the income derived from interstate commerce attributable to business done in this state. In view of this, petitioners have no just cause for complaint.

We do not find it necessary to discuss the many other points raised by petitioners, nor the many cases cited by them. The above analysis is a complete answer to all of their contentions. ■ We emphasize the fact that the act here involved imposes a tax on a corporation "for the privilege of exercising its corporate franchises within this state." Such a tax, under the authorities already cited, although measured in part by net income from interstate or foreign commerce originating here, does not compel a company to pay for the privilege in order to engage in interstate or foreign commerce.

The order of the respondent board is affirmed.

Rehearing denied.