## OKLAHOMA PIPE LINE CO. v. OKLA-HOMA TAX COMMISSION et al.

### No. 6121.

District Court, W. D. Oklahoma.

May 28, 1940.

Forrest M. Darrough, of Tulsa, Okl. (L. G. Owen and J. L. Seger, both of Tulsa, Okl., on the brief), for plaintiff.

Dick Jones, of Oklahoma City, Okl., and A. L. Herr, of Chickasha, Okl. (C. D. Stinchecum, of Oklahoma City, Okl., and Rowe Cook, of Atoka, Okl., on the brief), for defendants.

VAUGHT, District Judge.

The facts in this case are stipulated.

The Oklahoma Pipe Line Company is a corporation organized and existing under the laws of the state of Oklahoma with its corporate domicile in the city of Tulsa and now is and was at the time of the institution of this suit a resident and citizen of the state of Oklahoma.

During the year 1935 and for a number of years prior thereto, the sole business of the plaintiff was that of a common carrier of crude oil by pipe line for hire; and its gross income, excluding several small and incidental items not material in this action, was derived from the transportation of crude oil by pipe line. Plaintiff during said period was the owner of and operated a pipe line system which was wholly within the state of Oklahoma, said Oklahoma Pipe Line Company owning no pipe line outside the state of Oklahoma.

During the year 1935 in connection with its pipe line transportation business, plaintiff moved through its lines a very small volume of crude oil from a point or points in Oklahoma to other points within that state, at which latter points the oil so moved came to rest and the movement terminated. The major portion of the plaintiff's business consisted of the gathering of crude petroleum from various leases within the state of Oklahoma, the conveyance of same through plaintiff's gathering lines to its main pipe line system, thence through plaintiff's trunk line system for delivery to the Ajax Pipe Line Company at the Glenpool station of the plaintiff company at Glenpool, Oklahoma. The crude petroleum so delivered to the Ajax Pipe Line Company then moved through the lines of the latter company and through lines of connecting carriers in continuous movement to destinations in states other than Oklahoma and in countries other than the United States. The movements of said petroleum through the lines of the plaintiff and through the lines of the Ajax Pipe Line Company and connecting carriers to destinations outside of the state of Oklahoma were continuous and uninterrupted and were made under and pursuant to tariffs filed by plaintiff and approved by the Interstate Commerce Commission of the United States and concurred in by all connecting common carrier pipe line companies involved therein. Under said tariffs a specific rate or charge was provided to cover said movements of crude petroleum, which rate or charge was divided among the participating pipe line carriers including the plaintiff herein. The division was made as follows: ten per cent of the charge was divided among the participating carriers on a per capita basis; the remaining ninety per cent was divided among the participating carriers on a corrected mileage basis arrived at by agreements en-

tered into by, between and among all participating carriers. The rates applicable to such movements of crude oil during the year 1935 to points outside of the United States and the Oklahoma Pipe Line Company's per cent of participation therein were all disclosed by the stipulation.

In connection with the movements of crude petroleum throughˉ plaintiff's lines for destination in Sarnia, Province of Ontario, Dominion of Canada, plaintiff's net income during the year 1935 amounted to $160,106.93. Said movements of crude petroleum were continuous and uninterrupted through the pipe lines of plaintiff and of connecting carrriers to destination in Canada under and pursuant to through tariffs of the nature mentioned above.

The plaintiff contends that in the transportation of the crude petroleum it is engaged in intrastate, interstate and foreign commerce, and in making its income tax return for the year 1935, it made allocation of certain sums which it alleged were derived from intrastate commerce, interstate commerce, and foreign commerce. The plaintiff paid to the Oklahoma Tax Commission taxes in the sum of $9,606.41 on the income which it derived from the transportation of crude petroleum through its lines in the year 1935, destined for Sarnia, Canada, which payment was made under protest upon the demand of the Oklahoma Tax Commission, and this action for the recovery of said tax was commenced within thirty days from the date of the payment thereof. The plaintiff paid without protest an income tax on all income which it derived from what it termed its intrastate and interstate movements of said crude petroleum, its interstate business, as claimed by the plaintiff, arising from the fact that connecting carriers received the petroleum from the plaintiff's line within the state of Oklahoma and transported the same through their lines to another state, but not to a foreign country.

It is admitted that the Oklahoma Tax Commission is the legally authorized instrumentality, under the laws of Oklahoma, to assess and collect income taxes.

The plaintiff's contention is that any income which it derived from the transportation of oil through its lines in Oklahoma and whose final destination was the Dominion of Canada, is not subject to an income tax.

Section 6 of the 1935 Oklahoma Income Tax Act, 1935, S.L. chap. 66, art. 6, 68 Okl. St.Ann. § 876, provides: "(a) A tax is hereby levied upon every person as defined in Section 4(b), which tax shall be collected and paid, for each taxable year, upon, and with respect to, the entire net income of such person, which is derived from all property owned and/or business transacted within this State. And a like tax is hereby levied upon every person as defined in Section 4(b), which tax shall be collected and paid, for each taxable year, upon, and with respect to, the entire net income of such person which is derived from all property owned partly within and partly without this State and/or business done partly within and partly without this State (commonly known as interstate business), such income derived from property owned partly within and partly without this State and/or business transacted partly within and partly without this State, upon which said tax is hereby levied, to be determined or allocated under the formula or formulae as provided in Section 8 of this Act. * * *"

Section 8(f), 68 Okl.St.Ann. § 878(f), in part is as follows: "Oil, Gasoline and Gas Pipe Line Companies: The proportion of revenue derived from interstate business, shall be determined by taking the Oklahoma proportion of traffic units to total traffic units. 'Traffic Units' of oil pipe lines is hereby defined to be the transportation of one barrel of oil for a distance of one mile. 'Traffic Units' of Gasoline Pipe Lines is hereby defined to be the transportation of one gallon of gasoline for a distance of one mile. 'Traffic Units' for Gas Pipe Lines is hereby defined to be the transportation of one thousand cubic feet of natural or casinghead gas a distance of one mile."

Under Section 6, supra, the act provides for taxing the income "derived from all property owned and/or business transacted within this State." The second portion of Section 6 provides for the taxation of income "derived from all property owned partly within and partly without this State and/or business done partly within and partly without this State (commonly known as interstate business)."

We are faced with the situation here, however, where all of the property of plaintiff is located within the state of Oklahoma and all of the income in question was derived from the use of property wholly within the state of Oklahoma. The plaintiff does not contend that it owns any

pipe lines outside of the state of Oklahoma and, therefore, it could not transact business outside the state with its pipe line wholly in Oklahoma.

The plaintiff owned a pipe line in Oklahoma and the Ajax Pipe Line Company owned pipe line within Oklahoma and without Oklahoma, and by means of these and connecting lines, this oil was transported to Canada.

██ ██ The plaintiff had nothing to do with the through transportation of the oil except to its terminus at the Glenpool station, where it was delivered to the Ajax Pipe Line Company, therefore, the business that it did was business done within the state of Oklahoma by means of pipe lines located entirely in Oklahoma.

The section of the statute above quoted refers to business done partly within and partly without the state (commonly known as interstate business) and thus refers only to business done wholly within the state and business done partly within and partly without the state. The parenthetical expression, "commonly known as interstate business", is made to apply to business done partly within and partly without the state. Any foreign commerce that is done would necessarily be included under business done without the state and would come within the designation, "commonly known as interstate business."

It would be unreasonable to assume that income derived from intrastate and interstate business would be taxable, while income derived from property located within the state and utilized in transportation of oil, whose destination was a foreign country, would not be taxable. Why should income derived from foreign commerce be immune from taxation? Clearly the Legislature had in mind to tax income of an Oklahoma corporation, or a corporation owning property both within and without the state, whether that income was derived from property used wholly within the state or partly within and partly without the state.

The next question raised by the plaintiff is that the state would have no power to tax income derived from foreign commerce.

This position cannot be maintained in view of the decision reached in Matson Navigation Co. et al. v. State Board of Equalization of California et al., 3 Cal.2d 1, 43 P.2d 805, 807, in which the Supreme Court of California said:

"The first major contention of petitioners is that the Franchise Tax Act does not expressly include net income from interstate or foreign commerce and that the act cannot and should not be interpreted as imposing a tax measured by income derived from such business, even though such a tax is within the power of the state to impose. The problem thus presented is solely one of interpretation, turning solely upon the provisions of the act.

"The act does not specifically provide that income from business done in interstate or foreign commerce originating in this state shall be included in the measure of the tax. Such specific provision is not necessary, however, if the language employed is broad enough to and actually does include such income, and if such income is not otherwise excluded. It is our opinion that the provisions of the act include in the measure of the tax all income, however earned, unless such income is specifically excluded, and that since there is no provision specifically excluding the type of income here involved, it is necessarily included."

This case went to the Supreme Court of the United States, Matson Navigation Co. et al. v. State Board of Equalization of California, 297 U.S. 441, 56 S.Ct. 553, 80 L.Ed. 791, and that court held, quoting from paragraph one of the headnotes: "The commerce clause does not prevent a State from imposing upon her corporations, for the privilege of exercising their corporate franchises within the State, a tax measured on the net income justly attributable to their business done within the State, though part of the income so attributable be from interstate and foreign commerce."

The plaintiff has cited numerous authorities, many of which, in the judgment of this court, are not in point.

The court has no hesitation in concluding:

First, that the plaintiff's pipe line is located entirely within the state of Oklahoma;

Second, that all of the business done, whether it was in intrastate, interstate or foreign commerce, was done within the state of Oklahoma and comes clearly within the Oklahoma statute;

Third, that such portion of the income as plaintiff contends was income derived from foreign commerce is arrived at more by mathematical calculation and by agreement of the pipe line companies interested in the transportation of the oil to Canada than by actual fact.

Judgment will be rendered for the defendants. Findings of fact, conclusions of law and a form of judgment consistent with this opinion may be submitted within ten days. An exception is allowed the plaintiff.