419 Pa. 497 (1965)
Commonwealth
v.
Safe Harbor Water Power Corporation, Appellant.
Supreme Court of Pennsylvania.
Argued May 26, 1965.
November 9, 1965.
*498 Before BELL, C.J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.
Robert R. Batt, with him Ballard, Spahr, Andrews & Ingersoll, for appellant.
George W. Keitel, Deputy Attorney General, with him Walter E. Alessandroni, Attorney General, for Commonwealth, appellee.
OPINION BY MR. JUSTICE EAGEN, November 9, 1965:
Safe Harbor Water Power Corporation (appellant) has appealed from the judgment of the Court of Common Pleas of Dauphin County dismissing its appeal to that court in connection with its 1955 corporate net income tax liability. Appellant had filed its report of that tax on April 11, 1956 (the due date was April 15, 1956), and had reported tax due of $56,345.37. The Commonwealth of Pennsylvania (Commonwealth) subsequently *499 settled the tax at $89,571.55; but on petition for resettlement it reduced the tax to $86,006.22. The original settlement was mailed to appellant on February 18, 1959.
The questions involved in the administrative proceedings and in the court below were reduced on appeal here to two: (1) was the settlement timely in view of the provisions of § 8(a) of the Corporate Net Income Tax Act, Act of May 16, 1935, P.L. 208, as amended, 72 P.S. § 3420(h) (Act); and (2) what is the proper computation of the gross receipts allocation fraction (appellant having allocated only a small amount to Pennsylvania and the Commonwealth having allocated all to Pennsylvania)? Since our determination of the procedural question disposes of the case, we need not discuss or reach the gross receipts fraction question.
Section 8(a) of the Act of 1935, supra, states as follows: "All taxes due under this act shall be settled by the department, and such settlement shall be subject to audit and approval by the Department of the Auditor General, and shall, so far as possible, be made so that notice thereof may reach the taxpayer before the end of a year after the tax report was required to be made."
Under this requirement, settlement of appellant's 1955 corporate net income tax was required to be made so that notice thereof would reach appellant no later than April 15, 1957, one year after the due date. The copy of the settlement was, in fact, not mailed to appellant until February 18, 1959. Therefore, the settlement was at least one year and ten months late in reaching the taxpayer.
The only previous case in which the issue of timeliness was before this Court was Commonwealth v. Allied Building Credits, Inc., 385 Pa. 370, 123 A. 2d 686 (1956). In that case, we sustained the lower court's decision holding that the settlement was invalid *500 because it was made late. In doing so, we adopted excerpts from the opinions of the court below which established certain principles applicable to these situations. They can be summarized as follows: (1) if a settlement is not made within the time provided by the statute, the burden is upon the Commonwealth to explain why the settlement should not be held invalid because of lateness; (2) the justification for permitting the Commonwealth to explain in the first instance is the presence of the phrase "so far as possible" in § 8(a) of the Act; (3) this phrase relieves the Commonwealth from compliance with the time requirements of the statute under circumstances wherein the Commonwealth was unable to act at all or, though able to act, was under some disability which prevented it from acting promptly; (4) what constitutes such circumstances is a question which must be determined on the facts of each case.
Since our decision in the Allied Building Credits case, supra, the Court of Common Pleas of Dauphin County has decided six cases besides the present one, five in favor of the Commonwealth[1] and one against the Commonwealth.[2] Without reviewing each of those decisions, we deem it appropriate to try and settle the problem with more finality than we did in our earlier decision.
First, we reaffirm the principles established in Allied Building Credits, supra. We believe them to be sound. Second, the mandatory time limit of § 8(a) of the Act may not be ignored when the reasons for *501 a late settlement stem only from the Commonwealth's own procedures in making a settlement. For example, a desire by the Commonwealth to review a prior or later year's return before settling the return in question is not sufficient reason to excuse its lateness in acting. The essence of the inquiry is whether or not the Commonwealth was able to act in time, not whether it was engaged in administrative actions of its own choosing which made timely settlement less expedient. In short, without completely foreclosing the possibility that in a given case something may occur other than an act by the taxpayer itself which prevents settlement, we believe that the only general basis for excusing a late settlement is when the taxpayer does something to delay timely action.
We are supported in this conclusion by the fact that under § 8(c) of the Act the Commonwealth has an additional two years from the date of settlement to make a resettlement and under § 10 of the Act a taxpayer must retain its records pertaining to the report for a period of three years after filing  the total time allowed for settlement and resettlement. Thus, even if the Commonwealth is unsure of what to do with regard to a settlement, it can still act within the year and can then reconsider its action during the two year resettlement period. This much certainty in tax administration is due the taxpayer and is both desirable and proper.
Turning, then, to the facts in this case, we find four reasons advanced by the Commonwealth to justify its lateness in settling appellant's 1955 tax. None of them constitutes the kind of reason which satisfies the statutory basis for relief. Moreover, even if one or more did suffice in theory, none is justified by the actual facts.
First, the Commonwealth points to its administrative practice of pairing one year's report with that of a *502 prior year and refers to facts showing that appellant's 1954 capital stock tax report, while settled on March 22, 1956 (24 days prior to receipt of the report involved in this case), was resettled on September 18, 1956, with notice of this resettlement being mailed to appellant on November 28, 1956. This it (and the court below) says prevented the desired "pairing" until the last date noted and left only four and one-half months to consider settlement of the 1955 corporate net income tax report. We consider this argument wholly untenable. As we have stated above, an administrative practice such as "pairing" reports is no basis at all for excusing a late settlement. Moreover, even if "pairing" were a justification for lateness, we fail to understand how any "pairing" of one year's capital stock tax report with a succeeding year's corporate net income tax report contributes to settlement of the latter. The two taxes are wholly dissimilar. In addition, the settled 1954 capital stock tax report was available at the time the 1955 corporate net income tax report was received by the Commonwealth and, thus, was immediately available for "pairing". Finally, reliance on the time of a resettlement of the 1954 capital stock tax report as the date for "pairing" can only lead to an absurd result because the Commonwealth had a full two years to make this resettlement. Had it chosen to utilize this entire period, the date for "pairing" would have been extended for another sixteen months! We find nothing in this argument about "pairing" to justify a delay.
Second, appellant, on August 19, 1957, filed a Report of Change for its 1955 corporate net income tax. This, say the Commonwealth and the court below, prevented final ascertainment of its tax at least until after that date. Literally, this is true; but it is irrelevant to the question before us. Reports of Change stem from action by the Federal Internal Revenue Service in auditing a taxpayer's return. When a federal adjustment *503 is made to income, a corresponding adjustment must be reported for Commonwealth purposes. This adjustment may come years after a Commonwealth report is filed, however. It may even come years after a Commonwealth settlement is made. In such a case the Commonwealth's right to resettle is extended by the Act, § 7, to a date beyond the date of filing the Report of Change; so the Commonwealth is fully protected. Consequently, Reports of Change play no role whatsoever in considering the timeliness of original settlement. We note, also, that this Report of Change was filed four months after the deadline date for making settlement. Even if a Report of Change were a relevant factor, we fail to understand how the Commonwealth can excuse its failure to act by reference to an event which occurred after the last date for acting.
Third, the Commonwealth relies on its practice of "pairing" one utility's report with that of another in the same utility "system" and refers to a "pairing" here of appellant's 1955 report with those of one of its parents, Pennsylvania Power and Light Company. This, it says, could not have been done within the allotted time because Pa. P. & L. had filed an appeal with regard to its 1953 capital stock tax and this appeal was not terminated until April 24, 1958. Here, too, we reject the "pairing" argument absolutely. We also point out that determination of Pa. P. & L.'s 1953 capital stock tax could hardly affect appellant's 1955 corporate net income tax, that the Pa. P. & L. contorversy did not seem to affect settlement of appellant's 1954 taxes and that, in fact, Pa. P. & L. was not a parent of appellant in 1953 (it only became so in 1955 after a merger).
Finally, the Commonwealth suggests, its lateness was justified because on October 11, 1957, it began an investigation of appellant's 1954, 1955 and 1956 reports. *504 This investigation was completed and referred to the Department of Revenue's Legal Unit for advice. Only therafter, contends the Commonwealth, could settlement be made. We find here, again, an argument based upon an internal procedure indulged in by the Commonwealth. As with "pairing" we reject it absolutely as a justification for delay. The Commonwealth may investigate as it pleases, but it must settle within the statutory period. As stated above, it has a further two year period for resettlement; and an investigation may easily be made within such period. Parenthetically, we also note that the investigation request here was made six months after the deadline date for settlement. Even were it a relevant fact, such a late request could not justify the Commonwealth's failure to meet an already expired deadline.
We find nothing in all this which excuses the delay here. In applying the general principles initially stated, we can only conclude that the Commonwealth's lateness in making settlement was justified by no proper reason. Hence, the settlement was invalid; and the tax report must be accepted as filed. The correct amount of tax, therefore, is $56,345.37. Since appellant has paid $89,571.55, it is entitled to a credit of $33,226.18.
Judgment reversed and record remanded to the court below with directions to enter an order consonant with this opinion.
NOTES
[1] Commonwealth v. Fruehauf Trailer Co., 71 Dauph. 7 (1957); Commonwealth v. Dresser Industries, 75 Dauph. 111 (1960); Commonwealth v. Andale Company, 75 Dauph. 250 (1960); Commonwealth v. Lehval Industries, Inc., 75 Dauph. 254 (1960); Commonwealth v. Pennsylvania Manufacturers' Association Casualty Insurance Co., 76 Dauph. 275, 78 Dauph. 28, modified on other grounds, 410 Pa. 207, 188 A. 2d 729 (1963).
[2] Commonwealth v. Tonopah Mining Company, 83 Dauph. 279 (1965).