[Civ. No. 21335.   First Dist., Div. Three.   Nov. 30, 1964.]

HOUSEHOLD FINANCE CORPORATION, Plaintiff and Respondent, v. FRANCHISE TAX BOARD, Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, James E. Sabine, Assistant Attorney General, and Ernest P. Goodman, Deputy Attorney General, for Defendant and Appellant.

Edward J. Ruff, Thelen, Marrin, Johnson & Bridges, Lloyd R. Mowery, Hubachek & Kelly and Floyd E. Britton for Plaintiff and Respondent.

DRAPER, P. J.—Defendant board appeals from judgment directing refund of franchise taxes paid under protest for the years 1951 and 1952.

Plaintiff is engaged in the "small loan" or "consumer loan" business. In 1951 it had 423 branch offices, and in 1952, 427 branches, operating in 28 states and Canada. In each year it had 33 offices in California.

Plaintiff's general administrative offices are located in Chicago. That office prepares and revises operating manuals setting out detailed procedures which the branch offices follow. Within these limits, each branch may make loans. Regional and district supervisors regularly visit branch offices, review their operations, and report thereon to the general office. On the opening of a branch, funds are furnished by the general office. Although each branch has its own bank account, it must forward excess funds to central headquarters, upon which it may draw for further needs. Each branch keeps accounting records, but a central accounting system is maintained in Chicago. Some 60 per cent of the sums loaned are from money borrowed in turn by plaintiff. The Chicago office borrows these funds and redistributes them to the branches as needed. All leases of real estate are made by Chicago headquarters, which also maintains central purchasing, public relations, and personnel departments. Although most advertising is negotiated by branch managers, it is contracted for only after approval by the central advertising director's office, which prepares all copy and is directly billed by the media. Expense of central administration, national advertising (a small part of the total advertising budget), and interest on plaintiff's borrowings, is apportioned among the branch offices.

It is apparent that each branch is accorded a degree of autonomy, but that a strong central management prevails. The more than 400 branches ultimately operate as an integrated unit.

Plaintiff's franchise tax returns for the years in question showed net income based upon interest received by the 33 California branches, less expenses incurred by them, including amounts charged by the Chicago headquarters. Upon this separate accounting basis, plaintiff paid a tax of $34,731 for the income year 1951, and $53,416.33 for 1952. Defendant board applied a formula to determine the share of total income applicable to California, and proposed additional assessments of $30,123.88 for the earlier year, and $40,294.74

for the later. The formula is based upon three factors—the monthly average of loans outstanding, interest collected, and payroll. The ratio of these three factors for California business to the overall total of plaintiff's business was determined, and this percentage of total net income was taken to be the net income attributable to California. Plaintiff paid the added amounts under protest, and brought this action to recover them (Rev. & Tax. Code, § 26102).

Plaintiff asserts that the California business is readily separable from that done elsewhere, and that thus there is no basis for resort to a formula for determination of the California net income.

Implicit in plaintiff's argument is the view that an allocation formula may be resorted to only when separate accounting is impossible or not reasonably feasible. But that view has been flatly rejected (*Superior Oil Co.* v. *Franchise Tax Board,* 60 Cal.2d 406, 416 [34 Cal.Rptr. 545, 386 P.2d 33] ; *Honolulu Oil Corp.* v. *Franchise Tax Board,* 60 Cal.2d 417, 425 [34 Cal.Rptr. 552, 386 P.2d 40])[1].

Rather, if plaintiff's income is "derived from or attributable to sources both within and without the State" (Rev. & Tax. Code, § 24301, now § 25101) "then an allocation of total net income would naturally follow from the mandatory language of (this statute) and a separate accounting . . . could not be approved" (*Superior Oil Co.* v. *Franchise Tax Board, supra,* at p. 411). "If the operation of the portion of the business done within the state is dependent upon or contributes to the operation of the business without the state, the operations are unitary" (*Edison California Stores, Inc.* v. *McColgan,* 30 Cal.2d 472, 481 [183 P.2d 16]) and use of an allocation formula is required (*Superior Oil Co.* v. *Franchise Tax Board, supra,* at p. 416-417).

The "unitary nature" of a business, which establishes the need for allocation, is established by " (1) Unity of ownership; (2) Unity of operation as evidenced by central purchasing, advertising, accounting and management divisions; and (3) unity of use in its centralized executive force and general system of operation." (*Butler Brothers* v. *McColgan,* 17 Cal.2d 664, 678 [111 P.2d 334].) The first element is clearly present here. The second seems equally clear,

---

[1]These decisions were filed after determination of the case at bench by the trial court.

although the central "purchasing" is by the borrowing of money, which is the "merchandise" of plaintiff. The third element, unity of use, is established by the centralized distribution of the "merchandise" to the several branches, and the ultimate control of the central headquarters over operational procedures in the branches in all states. It follows that determination of California income by an allocation formula is required. To the extent that the findings of fact conflict with the views we have expressed, they are either contrary to the stipulated facts or are but conclusions of law, and thus not binding on appeal.

Plaintiff also attacks the propriety of the formula adopted. Underlying much of this attack is the view that separate accounting for California income can reasonably and readily be had. To this extent, the contention is refuted by what has been said as to the requirement of allocation in this case.

Plaintiff asserts that basing the formula on outstanding loans, interest collected, and payroll, is erroneous. But for a business dealing in large part in tangible goods, a formula based upon the factors of property, payroll, and sales has been upheld (*John Deere Plow Co.* v. *Franchise Tax Board*, 38 Cal.2d 214 [238 P.2d 569]). The "property" of Household Finance Corporation is its outstanding loans represented by notes receivable. Its collections of interest appear entirely analogous to the sales of John Deere Plow Company. The payroll factor is the same in both cases. The formula used for the finance company is based upon factors reasonably and fairly adapting to this different type of business the factors found proper in *Deere*. We find nothing arbitrary in using them to compare the national and California business of plaintiff, and to determine the proportion of total business attributable to California.

Plaintiff, however, asserts that its California costs are higher than costs elsewhere, because salaries here are higher, the California branches were comparatively new at the time in question, and each served a larger area and greater population than elsewhere. But such differences in expense do not preclude use of a formula for apportionment of the unitary income (*John Deere Plow Co.* v. *Franchise Tax Board, supra,* at p. 225). The board is given discretion in selecting the factors to be utilized in the formula (*El Dorado Oil Works* v. *McColgan,* 34 Cal.2d 731, 736 [215

P.2d 4]). "Rough approximation rather than precision" is sufficient (*id.*, at p. 741), and the taxpayer has the burden of showing oppression by "clear, cogent evidence" (*id.*, at p. 744). Such evidence must go to each element of the formula equation, and show that the formula unfairly apportions net income to California (*Edison California Stores, Inc.* v. *McColgan, supra,* 30 Cal.2d 472, 479). On the whole, and in view of the "practical impossibility of . . . perfect apportionment" (*International Harvester Co.* v. *Evatt,* 329 U.S. 416, 422 [67 S.Ct. 444, 91 L.Ed. 390, 395]), we are satisfied that the apportionment made by the board is fair. The stipulated facts make this a question of law, and the contrary "findings" of the trial court cannot stand.

The foregoing also disposes of plaintiff's argument that the formula results in California's taxing intangible assets which do not have a taxable situs in this state.

Judgment reversed, with directions to enter judgment for defendant.

Salsman, J., and Devine, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 27, 1965. Mosk, J., did not participate therein.