[Civ. No. 26105. First Dist., Div. One. Mar. 31, 1970.]

MONTGOMERY WARD & COMPANY, INCORPORATED, Plaintiff and Appellant, v. FRANCHISE TAX BOARD, Defendant and Respondent.

## COUNSEL

Valentine Brookes, Paul E. Anderson, Charles S. Franklin, Kent, Brookes & Anderson and Irwin J. Shapiro for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, Ernest P. Goodman, Assistant Attorney General, and John J. Klee, Jr., Deputy Attorney General, for Defendant and Respondent.

## Opinion

SIMS, J.—Plaintiff taxpayer has appealed from a judgment which denied it recovery of a portion of its corporate franchise taxes (Rev. & Tax. Code, § 23151[1]) assessed and paid for the taxpayer's fiscal income years ending on January 31st in the years 1955 through 1960. The income upon which the tax for each year was based was that portion of the taxpayer's total net income which the taxing authorities found to be derived from, or attributable to, sources within this state.[2] The taxpayer contends that respondent Franchise Tax Board erred in allocating its income in each of the years in question because it included property in transit to California in the numerator of the property factor used in the income allocation

---

[1]At all times pertinent, the law of this state provided, "With the exception of financial corporations, every corporation doing business within the limits of this State and not expressly exempted from taxation by the provisions of the Constitution of this State or by this part, shall annually pay to the State, for the privilege of exercising its corporate franchises within this State, a tax according to or measured by its net income, to be computed at the rate of 4 percent upon the basis of its net income for the next preceding income year. . . ." (Rev. & Tax. Code, § 23151, as added Stats. 1949, ch. 557, §1, p. 963, effective July 1, 1951. Effective June 24, 1959, the rate was increased to 5.5 percent by Stats. 1959, ch. 1127, § 1, p. 3212, and, effective July 29, 1967, to 7 percent by Stats. 1967, ch. 963, § 104, p. 2510.)

[2]The governing statutory provisions were as follows: "When the income of a taxpayer subject to the tax imposed under this part is derived from or attributable to sources both within and without the State, the tax shall be measured by the net income derived from or attributable to sources within this State. Such income shall be determined by an allocation upon the basis of sales, purchases, expenses of manufacture, pay roll, value and situs of tangible property or by reference to any of these or other factors or by such other method of allocation as is fairly calculated to determine the net income derived from or attributable to sources within this State. [Income from business carried on partly within and partly without this State shall be allocated in such a manner as is fairly calculated to apportion such income among the states or countries in which such business is conducted.] . . . *provided, however, that any such factors or other method of allocation shall take into account as income derived from or attributable to sources without the State, income derived from or attributable to transportation by sea or air without the State, whether or not such transportation is located in or subject to the jurisdiction of any other state, the United States or any foreign country.* Income attributable to isolated or occasional transactions in states or countries in which the taxpayer is not doing business shall be allocated to the state in which the taxpayer has its principal place of business or commercial domicile.

"If the Franchise Tax Board reallocates net income upon its examination of any return, it shall, upon the written request of the taxpayer, disclose to him the basis upon which its reallocation has been made." (Former § 24301, as found in Stats. 1951, ch. 374, § 13, p. 1172, included the matter in brackets but not the proviso which is italicized. Effective June 6, 1955 the provisions formerly in § 24301 were renumbered and reenacted as § 25101, by Stats. 1955, ch. 938, § 19, p. 1577 and § 20, p. 1649. By Stats. 1957, ch. 2097, §§ 1 and 2, pp. 3721-3722, as applicable with respect to income years beginning after December 31, 1956 (see § 25101.5), the italicized proviso was enacted and the portion of the section in brackets was deleted.)

formula. It also asserts that some of the assessments were barred because the board's notices of assessment were not issued within the time provided by law.

It is concluded for the reasons set forth below that the taxpayer's attack on the allocation formula must fail, and that the notices of additional taxes proposed to be assessed were timely made. Nevertheless the case must be remanded because the judgment failed to include a refund to which it was stipulated the taxpayer was entitled. The stipulated facts relating to the issues involved are incorporated in the discussion

## I

*Statement of Facts*

The taxpayer is a corporation organized under the laws of Illinois with its principal office and place of business in Chicago, Illinois. It conducts a nationwide retail sales business, and is qualified to do business in California and in other states. It sells its merchandise both by mail order and by direct sale from retail stores which it owns and manages in many different cities throughout California and other states.

For purposes of this action, the parties stipulated that the taxpayer's operations constitute a unitary business, and that it is appropriate to compute the amount of its income attributable to California sources by use of the three-factor apportionment formula of property, payroll and sales. The parties do not dispute the computation of unitary net income (a term meaning the taxpayer's net income from all its business operations, part of which is apportionable to California by formula), the computation of the payroll factor in the formula and the computation of the sales factor in the formula, except as these amounts may not have been timely determined by the Franchise Tax Board.

In accordance with the rules of the Franchise Tax Board, for purposes of computing the property factor of the apportionment formula, the taxpayer used the average of the property, including inventory, on the first day of the year and the last day of the year. Upon any one day the taxpayer owns property, usually merchandise and store supplies, which is physically moving from one location to another. In some cases the property is moving from one of Montgomery Ward's retail stores, mail order stores, warehouses or distribution centers to another of Montgomery Ward's retail stores, mail order stores, warehouses or distribution centers. In other cases the property is moving from an independent vendor or from a company factory to one of the retail stores, mail order stores, warehouses or distri-

bution centers. The transportation is sometimes wholly intrastate and sometimes interstate.

In computing the property factor for use in its California franchise tax returns for the years here involved, the taxpayer included all its property, including its property-in-transit, in the denominator of the fraction. It included no property-in-transit in the numerator of the fraction. The taxpayer included in the numerator of the fraction only the property physically at rest at a California store or warehouse. In its returns, the taxpayer did not treat as California property that property which was moving from one California location to another California location. Likewise not treated by the taxpayer as California property was that property which, coming to California from out-of-state or going from California to an out-of-state destination, was actually within California at midnight of January 31, the date used for averaging purposes.

The board determined that the numerator of the property factor fraction should have contained those amounts of the taxpayer's property-in-transit which were en route to a California destination. As thus recomputed by the board, the numerator of the fraction included that portion of the property-in-transit which was determined to be in transit to a California destination, regardless of its actual location on midnight of January 31. Likewise, the board excluded from the numerator of the fraction that portion of the property-in-transit that was determined to be in transit from a California point of origin to a destination outside California, regardless of whether the property was actually within the territorial boundaries of California on midnight of January 31. The board then issued notices of proposed assessments accordingly.

The taxpayer paid the additional assessments and filed claims for refund for the full amount of the payments. After those claims were denied, it brought this suit for refund, still praying for the full amount of the payments.

 On appeal the taxpayer refers to stipulated figures which represent the value of the property in transit to, but not within the State of California, and confines its argument to the exclusion of these values from the numerator. It contends (1) that the statutory provisions (fn. 2 above) direct that all property which does not have a taxable situs within the state must be excluded from the numerator, (2) that the board cannot substitute its discretion for the mandate of the Legislature, (3) that if the statute is construed to give the board discretion to initiate its own formula it would be invalid as an unconstitutional delegation of legislative power, and (4) that the due process and commerce clauses of the United States

Constitution prohibit the board from measuring the taxpayer's liability by extraterritorial property. An examination of these contentions reveals that they are not controlling in view of the expressed and constitutionally authorized legislative intent to measure the tax by the net income derived from or attributable to sources within this state, and the reasonableness of the formula applied to obtain this end.

██ "No method of allocation can precisely determine the exact amount of income attributable either to any given geographic area or to any given part of a series of business transactions culminating in the realization of a profit, and 'any effort' in that regard 'must be more or less arbitrary and fictitious' (*Gorham Mfg. Co.* v. *Travis,* 274 F. 975, 978) as a matter of practical tax administration. ██ In short, as was recently said by the Supreme Court of the United States in sustaining the validity of a franchise tax assessment, the 'practical impossibility of a state's achieving a perfect apportionment of expansive, complex business activities . . . [makes] "rough approximation rather than precision" . . . sufficient' in the formula allocation of income from a unitary business. (*International Harvester Co.* v. *Evatt,* 329 U.S. 416, 422 . . .)" (*El Dorado Oil Works* v. *McColgan* (1950) 34 Cal.2d 731, 741 [215 P.2d 4].)

Following the judgment of the lower court in this case, the foregoing principles were reaffirmed in *McDonnell Douglas Corp.* v. *Franchise Tax Board* (1968) 69 Cal.2d 506 at page 511 [72 Cal.Rptr. 465, 446 P.2d 313]. There the court added, "The use of a formula consisting of the three factors of property, payroll, and sales often suffices to apportion to a state that part of a corporation's net income fairly attributable to business done within the state. [Citations.]

██ "Discretion as to the factors to be used was placed in the commissioner and his successor, the Franchise Tax Board. As stated in *RKO Teleradio Pictures, Inc.* v. *Franchise Tax Board,* 246 Cal.App.2d 812, at page 819 . . .: 'The Franchise Tax Board is given discretion in the selection of [the] factors to be utilized in a tax formula (*El Dorado Oil Works* v. *McColgan* [*supra*] 34 Cal.2d 731, 736 . . .) and where, as here, the taxpayer contends that the formula is arbitrary and reaches an unreasonable result, the burden is on the taxpayer to establish such facts by clear and convincing evidence.' (see *Butler Bros.* v. *McColgan, supra,* 315 U.S. 501, 507 [86 L.Ed. 991, 996] . . .)" (69 Cal.2d at p. 512, fn. omitted.)

The taxpayer emphasizes the clause of the statute (see fn. 2 above) which reads "value and situs of tangible property," and interprets it as a mandate that the allocation formula cannot use the value of property as

a measure of the net income derived from or attributable to sources within the state, unless that property has a situs for taxation within the state.

■ It is axiomatic that tangible personal property which is situated outside of the taxing jurisdiction generally cannot be subjected to a property tax. (*Frick* v. *Pennsylvania* (1925) 268 U.S. 473, 489 [69 L.Ed. 1058, 1062, 45 S.Ct. 603, 42 A.L.R. 316]; *Union Refrigerator Transit Co.* v. *Kentucky* (1905) 199 U.S. 194, 204 [50 L.Ed. 150, 153, 26 S.Ct. 36]; *Smith* v. *Ajax Pipe Line Co.* (8th Cir. 1937) 87 F.2d 567, 569-571; and see *Southern Pac. Co.* v. *McColgan* (1945) 68 Cal.App.2d 48, 69 [156 P.2d 81].) In this sense the "situs" of the property in transit for taxation purposes must be deemed to be outside of this state, unless such "situs" can be predicated upon certain principles not applicable in this case.[3]

■ The question here is not one of ad valorem taxation, but a tax on the taxpayer for the privilege of exercising its corporate franchise in this state. The sole question is whether its net income has been apportioned properly. California is not attempting to tax the goods in transit to California anymore than it is attempting to tax sales, which although free from direct tax because consummated by delivery out of the state, may be used to measure the business emanating in California in relation to the total business conducted by the taxpayer for the purpose of computing a proper apportionment.

With respect to the latter measure, the United States Supreme Court observed, "Appellant contends that the State has thus taxed sales made outside of Ohio in violation of the Due Process Clause. A complete answer to this due process contention is that Ohio did not tax these sales. Its statute imposed the franchise tax for the privilege of doing business in Ohio for profit. The State supreme court construed the statute as imposing the

---

[3]The taxpayer adverts to the theory of *mobilia sequintur personam* under which tangible personal property has been given a situs at the domicile of its owner where an actual situs has not been acquired elsewhere (see *Southern Pac. Co.* v. *Kentucky* (1911) 222 U.S. 63, 67-68 [56 L.Ed. 96, 97-98, 32 S.Ct. 13]; *Scandanavian Airlines System, Inc.* v. *County of Los Angeles* (1961) 56 Cal.2d 11, 36-37 [14 Cal.Rptr. 25, 363 P.2d 25]; *Martinac* v. *County of San Diego* (1967) 255 Cal.App.2d 175, 178 [63 Cal.Rptr. 64]; *Sayles* v. *County of Los Angeles* (1943) 59 Cal.App.2d 295, 301 [138 P.2d 768]; and *Carlos Ruggles Lbr. Co.* v. *Commonwealth* (1927) 261 Mass. 445, 448-449 [158 N.E. 897, 898].) It also notes that under a "permanency of location" theory tangible personal property may acquire a situs for taxation away from the domicile of the owner (see *Scandanavian Airlines System, Inc.* v. *County of Los Angeles, supra,* 56 Cal.2d 11, 30; and *Sayles* v. *County of Los Angeles, supra,* 59 Cal.App.2d 295, 298-299), and that property having acquired an established permanent situs cannot be relieved of ad valorem taxation by temporary removal from the taxing state. (*Brock & Co.* v. *Board of Supervisors* (1937) 8 Cal.2d 286, 289-291 [65 P.2d 791, 110 A.L.R. 700]; *Brock & Co.* v. *Board of Supervisors* (1939) 32 Cal.App.2d 550, 555 [90 P.2d 353].)

tax on corporations for engaging in business such as that in which taxpayer engaged. One branch of that business was manufacturing. It has long been established that a state can tax the business of manufacturing. The fact that it chose to measure the amount of such a tax by the value of the goods the factory has produced, whether of the current or a past year, does not transform the tax on manufacturing to something else." (*International Harvester Co.* v. *Evatt* (1947) 329 U.S. 416, 420 [91 L.Ed. 390, 393, 67 S.Ct. 444]. See § 23040; *El Dorado Oil Works* v. *McColgan, supra,* 34 Cal.2d 731, 741-743; *West Publishing Co.* v. *McColgan* (1946) 27 Cal.2d 705, 708-710 [166 P.2d 861], affirmed (1946) 328 U.S. 823 [90 L.Ed. 1603, 66 S.Ct. 1378]; and *Luckenbach S.S. Co.* v. *Franchise Tax Board* (1963) 219 Cal.App.2d 710, 720 [33 Cal.Rptr. 544], appeal dismissed (1964) 377 U.S. 215 [12 L.Ed.2d 292, 84 S.Ct. 1224].)

The statutory mandate to make an allocation on factors, including among others, "the basis of . . . value and situs of tangible property" is satisfied by considering all of the tangible property of the taxpayer, as the denominator, and, as the numerator, all of the property of the taxpayer which has a situs, whether within or without this state, which directly affects the net income derived from or attributable to sources within this state.

The taxpayer contends that the foregoing conclusion would enable the state to reach out and encompass in the local portion of the ratio property in the process of manufacture or stored outside of the state because it was ultimately destined for use or consumption in California. It is unnecessary to consider such eventualities in this case. It is obvious that such property has a well defined taxable situs elsewhere and remains subject to the taxpayer's discretion and control as to its ultimate destination. (See *Bacon* v. *Illinois* (1913) 227 U.S. 504 [57 L.Ed. 615, 33 S.Ct. 299]; and *Coe* v. *Errol* (1886) 116 U.S. 517 [29 L.Ed. 715, 6 S.Ct. 475].) The board here has only included in the measure that property which has been unconditionally appropriated for utilization in California, and which, so far as appears from the record, has neither been taxed elsewhere, nor used as a measure of income derived from or attributable to another taxing jurisdiction. (Cf. *Carlos Ruggles Lbr. Co.* v. *Commonwealth* (1927) 261 Mass. 445, 450 [158 N.E. 897, 899].)

It is not necessary to determine whether such goods, having been appropriated to the California business by consignment to carriers for delivery to California, may still be subject to an ad valorem tax at the point of origin, or at the domicile of the corporation, or in any state in which they are found while en route. It appears to be established that once the goods are in the stream of commerce they are not subject to such taxation until they come to rest. (*Champlain Realty Co.* v. *Town of Brattleboro* (1922)

260 U.S. 366, 372-377 [67 L.Ed. 309, 312-314, 43 S.Ct. 146, 25 A.L.R. 1195]; and see Powell, *Taxation of Things in Transit* (1920-1921) 7 Va.L. Rev. 167, 245, 429, 497, passim.) Nor does this case involve the proper allocation, for purposes of property taxation, of values of items of property consisting of instrumentalities of interstate commerce among several states in which such property is used. (See *Norfolk & Western Ry. Co.* v. *Missouri State Tax Com.* (1967) 390 U.S. 317, 323-325 [19 L.Ed.2d 1201, 1206-1207, 88 S.Ct. 995]; *Braniff Airways* v. *Nebraska Board* (1954) 347 U.S. 590, 591 [98 L.Ed. 967, 972, 74 S.Ct. 757]; *Standard Oil Co.* v. *Peck* (1951) 342 U.S. 382, 384 [96 L.Ed. 427, 430, 72 S.Ct. 309, 26 A.L.R.2d 1371; *Ott* v. *Mississippi Valley Barge Line* (1949) 336 U.S. 169 [93 L.Ed. 585, 69 S.Ct. 432]; *Johnson Oil Refining Co.* v. *Oklahoma* (1933) 290 U.S. 158, 161-163 [78 L.Ed. 238, 241-243, 54 S.Ct. 152].)

The true question is whether the method of allocation is fairly calculated to assign to California that portion of the net income reasonably attributable to the business done in this state, ". . . if the formula which was employed meets those standards, any constitutional question arising under the Fourteenth Amendment is at an end." (*Bulter Bros.* v. *McColgan* (1942) 315 U.S. 501, 507 [86 L.Ed. 991, 996, 62 S.Ct. 701]. See also, *Northwestern States Portland Cement Co.* v. *Minnesota* (1959) 358 U.S. 450, 452 and 460 [3 L.Ed.2d 421, 423 and 428, 79 S.Ct. 357, 67 A.L.R.2d 1292]; *International Harvester Co.* v. *Evatt, supra,* 329 U.S. 416, 422-423 [91 L.Ed. 390, 395-396]; *Atlantic Lbr. Co.* v. *Comr.* (1936) 298 U.S. 553, 557 [80 L.Ed. 1328, 1331, 56 S.Ct. 887]; *Bass, Ratcliff & Gretton, Ltd.* v. *Tax Com.* (1924) 266 U.S. 271, 280-284 [69 L.Ed. 282, 286-288, 45 S.Ct. 82]; *Underwood Typewriter Co.* v. *Chamberlain* (1920) 254 U.S. 113, 120-121 [65 L.Ed. 165, 169-170, 41 S.Ct. 45; *John Deere Plow Co.* v. *Franchise Tax Board* (1951) 38 Cal.2d 214, 224-225 [238 P.2d 569]; *El Dorado Oil Works* v. *McColgan, supra,* 34 Cal.2d 731, 744-745; *RKO Teleradio Pictures, Inc.* v. *Franchise Tax Board* (1966) 246 Cal.App.2d 812, 818 [55 Cal.Rptr. 299]; *Household Finance Corp.* v. *Franchise Tax Board* (1964) 230 Cal.App.2d 926, 930-931 [41 Cal.Rptr. 565]; *Luckenbach S.S. Co.* v. *Franchise Tax Board, supra,* 219 Cal.App.2d 710, 715; and *Pacific Fruit Express Co.* v. *McColgan* (1944) 67 Cal.App.2d 93, 96 [153 P.2d 607].)

On the other hand, where the formula applied does not fairly allocate the net income of a unitary business, it may prove invalid because of failure to follow the statutory mandate, or because it in effect taxes property values which are protected by the commerce clause or the due process clause of the federal Constitution. (See *General Motors Corp.* v. *District of Columbia* (1965) 380 U.S. 553, 555 [14 L.Ed.2d 68, 70, 85 S.Ct. 1156]; *Hans*

*Rees' Sons* v. *North Carolina* (1931) 283 U.S. 123, 135 [75 L.Ed. 879, 907, 51 S.Ct. 385]; *Wallace* v. *Hines* (1920) 253 U.S. 66, 70 [64 L.Ed. 782, 787, 40 S.Ct. 435]; *International Paper Co.* v. *Massachusetts* (1918) 246 U.S. 135, 141 [62 L.Ed. 624, 629, 38 S.Ct. 292]; and *McDonnell Douglas Corp* v. *Franchise Tax Board* (1968) 69 Cal.2d 506, 513-514 [72 Cal.Rptr. 465, 446 P.2d 313].)

As noted above ". . . where, as here, the taxpayer contends that the formula is arbitrary and reaches an unreasonable result, the burden is on the taxpayer to establish such facts by clear and convincing evidence." (*RKO Teleradio Pictures, Inc.* v. *Franchise Tax Board, supra,* 246 Cal.App.2d 812, 819. See also, *Northwestern States Portland Cement Co.* v. *Minnesota, supra,* 358 U.S. 450, 463 [3 L.Ed.2d 421, 430]; *Butler Bros.* v. *McColgan, supra,* 315 U.S. 501, 507; *McDonnell Douglas Corp.* v. *Franchise Tax Board, supra,* 69 Cal.2d 506, 512; *El Dorado Oil Works* v. *McColgan, supra,* 34 Cal.2d 731, 744; *Edison California Stores, Inc.* v. *McColgan* (1947) 30 Cal.2d 472, 482 [183 P.2d 16]; *Household Finance Corp.* v. *Franchise Tax Board, supra,* 230 Cal.App.2d 926, 931; *Luckenbach S.S. Co.* v. *Franchise Tax Board, supra,* 219 Cal.App.2d 710, 717; and *Pacific Fruit Express Co.* v. *McColgan, supra,* 67 Cal.App.2d 93, 96.)

The taxpayer has failed to meet this burden of proof. Having rejected his arguments concerning the interpretation of the statute, and his contention that the formula which was applied was unconstitutional because it taxes property in violation of the commerce and due process clauses, attention may be directed to the purpose of the property factor in the allocation formula. "Property is included on the basis that capital is invested in a business as an income-producing element." (Wahrhaftig, *Allocation Factors in Use in California* (1960) 12 Hastings L.J. 65, 73.) It may be assumed that all furniture, fixtures and equipment acquired and held for use in California have been so acquired and are so used for the taxpayer's business purposes. It is obvious that the merchandise inventory held in this state at any particular time is held for sale with the hope of resultant profit. If property of either nature is in transit, and its value is included, as it has been, in computing the value of all of the taxpayer's property for the denominator of the property factor, should not such value be allocated to that territorial jurisdiction to which the property itself has been consigned for, it may be assumed, the production of income? The answer appears obvious.[4] The formula selected by the board appears to

[4]The board points out that there are five possible ways to handle the property in transit. They are: "(1) Exclude such property from the property factor completely. Thus, the 'property-in-transit' would be excluded from both the numerator and the denominator of the fraction. (2) Include such property in the denominator but do not include any of such property in the numerator for any state. (3) Include such

accurately reflect that portion of the taxpayer's total property which has been appropriated for the production of income in California.

Section 23040 of the code provides: "Income derived from or attributable to sources within this State includes income from tangible or intangible property located or having a situs in this State and income from any activities carried on in this State, regardless of whether carried on in intrastate, interstate or foreign commerce." The taxpayer confuses the use of property values in the allocation formula, with the final product "income derived from or attributable to sources within this state." He argues that section 23040 requires that there be excluded "income from tangible or intangible property" *not* "located or having a situs in this state," and that this prohibition prevents use of the property in transit in the formula. This approach overlooks the fact that the property in transit only becomes income producing when it arrives within this state, and its value is only a part of a complex formula to measure and allocate net income from the ever changing and fluctuating total property, and property in California.

There is nothing novel in picking up a portion of a factor which is not directly allocable to another taxing jurisdiction. (See *Luckenbach S.S. Co.* v. *Franchise Tax Board, supra,* 219 Cal.App.2d 710, 715-716 and 719-720; and Keesling & Warren, *California's Uniform Division of Income for Tax Purposes Act (1967-1968)* 15 U.C.L.A. L.Rev. 156 and 655, at pp. 676-677.)[5]

■ "The Franchise Tax Board is given discretion in the selection of the factors to be utilized in a tax formula . . . ." (*RKO Teleradio Pictures, Inc.* v. *Franchise Tax Board, supra,* 246 Cal.App.2d 812, 819. See also, *McDonnell Douglas Corp.* v. *Franchise Tax Board, supra,* 69 Cal.2d 506, 512; *El Dorado Oil Works* v. *McColgan, supra,* 34 Cal.2d 731, 736; *Household Finance Corp.* v. *Franchise Tax Board, supra,* 230 Cal.App.2d 926, 930-931; *Pacific Fruit Express Co.* v. *McColgan, supra,* 67 Cal.App.2d 93, 100-101.) The delegation of such discretion is not an

---

property in the denominator and, for purposes of the numerator of the fraction, assign the property to the state from which the property was sent. (4) Include such property in the denominator and, for purposes of the numerator of the fraction, assign the property to the place where it happens to be physically located at midnight of the chosen date; or (5) Include such property in the denominator and, for purposes of the numerator of the fraction, assign the property to the state to which the property is destined."

[5]The 1957 amendment of section 25101 (see fn. 2 above) in effect repealed the port-day formula, approved in the *Luckenbach* case, insofar as income attributable to transportation by sea or air without the state is concerned. It did not, however, overturn the principle that factors outside of the state could be used to establish values "reasonably attributable" to California. (See 219 Cal.App.2d at p. 720. cf. regulation 25101(b), Cal. Admin. Code, tit. 18, § 25101(b).)

illegal delegation of the taxing power of the Legislature. (*El Dorado Oil Works* v. *McColgan, supra,* 34 Cal.2d at p. 737; *Pacific Fruit Express Co.* v. *McColgan, supra,* 67 Cal.App.2d at p. 103.) It is only when the formula selected is intrinsically arbitrary and also reaches an unreasonable result that the discretion of the board will be overturned. (See *McDonnell Douglas Corp.* v. *Franchise Tax Board, supra,* 69 Cal.2d 506, 514-515.) The fact that the court has restricted the board's discretion to apply separate accounting rather than allocation under the unitary business rule (see *Superior Oil Co.* v. *Franchise Tax Board* (1963) 60 Cal.2d 406, 413 [34 Cal.Rptr. 545, 386 P.2d 33]; and *Honolulu Oil Corp.* v. *Franchise Tax Board* (1963) 60 Cal.2d 417, 425 [34 Cal.Rptr. 552, 386 P.2d 40]) does not indicate any change in the foregoing rule. It subsequently was reaffirmed in *McDonnell.* The cases referred to merely echo the mandate of the statute that the unitary rule with allocation is the prescribed method of taxation when unity of ownership, operation and use indicate that the income of the taxpayer "is derived from or attributable to sources both within and without the State." (See § 25101; and see Keesling & Warren, *op.cit.,* 15 U.C.L.A. L.Rev. at pp. 167-169.)

In 1966 (Stats. 1966, ch. 2, pp. 253 et seq.) the Legislature adopted, for income years beginning after December 31, 1967, the Uniform Division of Income for Tax Purposes Act, and amended section 25101 and other sections of the code accordingly. Section 25129 of the code was added to provide, "The property factor is a fraction, the numerator of which is the average value of the taxpayer's real and tangible personal property owned or rented and used in this state during the income year and the denominator of which is the average value of all the taxpayer's real and tangible personal property owned or rented and used during the income year." The taxpayer contends that the inclusion of the property in transit violates this provision, and that the prior law should be applied in a similar manner. It is unnecessary to construe the provisions of a statute which was adopted after the taxable years in question in this suit. It suffices to say that it cannot be said arbitrarily that goods in transit at the time of a break in taxable periods are not used within the taxing jurisdiction in the ensuing year.

It is also not necessary in this case to determine whether the discretion heretofore and herein approved with respect to the taxing authority's powers under section 25101, will apply under the provisions of sections 25137 and 25138 as adopted from the uniform act. (See Keesling & Warren, *op.cit.,* 15 U.C.L.A. L.Rev. at pp. 170-172.)

Finally, the taxpayer asserts that the inclusion of the goods in transit in the numerator produces an overloading of the property factor by

duplication because the value of tangible property in California at any time includes what were yesterday's goods in transit. The answer, of course, is that today's inventory does not include today's goods in transit. The stipulation reads, "On any one day plaintiff has property (usually merchandise and store supplies) which is physically moving from one location to another." This property exists in addition to the inventory "on one day." It is not duplicated in that inventory.[6] As has been demonstrated when property is irrevocably consigned and shipped to this state it may properly be used to measure that part of the total property of the taxpayer appropriated for the production of income in California.

No error is found in the inclusion of the goods in transit to California in the numerator, as well as the denominator of the property factor of the allocation formula.

## II

The taxpayer's assertion of the time limit on the matter of assessments depends upon the interpretation of the applicable code sections. Under the provisions of section 25663[7] "every notice of additional tax proposed to be assessed shall be mailed to the taxpayer within four years after the return was filed." For the purposes of that section "a return filed before the last

---

[6]The fact that the board has added absolute figures of goods in transit on a given day, as distinguished from the average of goods in transit on the first and last day of the year, as was apparently done with the values of tangible property actually within the state, may have produced some distortion. In the absence of any objection on this score, or any factual data to show how it affected the taxes assessed, it cannot be considered at this stage of the proceedings.

[7]Stats. 1951, ch. 833, § 2, p. 2321, effective June 2, 1951, provided in full: "§ 25663. Except in the case of a fraudulent return, and except as otherwise provided in Sections 25663a and 25663b, every notice of additional tax proposed to be assessed shall be mailed to the taxpayer within four years after the return was filed. No deficiency shall be assessed or collected with respect to the year for which such return was filed unless the notice is mailed within the four-year period or as otherwise provided. For the purposes of this section a return filed before the last day prescribed by law for the filing thereof shall be considered as filed on that day." By Stats. 1959, ch. 273, § 5, p. 2176, the section was recast to read, insofar as it pertinent here, as follows: "25663. (a) Except in the case of a fraudulent return, and except as otherwise expressly provided in this article, every notice of additional tax proposed to be assessed shall be mailed to the taxpayer within four years after the return was filed. No deficiency shall be assessed or collected with respect to the year for which such return was filed unless the notice is mailed within the four-year period or as otherwise provided.

"(b) For the purposes of this section and Section 25663a or 25663c a return filed before the last day prescribed by law for the filing thereof shall be considered as filed on such last day. . . ."

Section 25663c, which is not applicable to this case, prescribes a six-year limitation when the return filed by the taxpayer understates gross income by more than 25 percent.

day prescribed by law for the filing thereof ["two months and 15 days after the close of (the taxpayer's) income year (§ 25401)] shall be considered as filed on such last day." So far as appears, this section gave the board the power to assess deficiencies up to April 15th of the fourth year after the respective income years, ending January 31, 1955 through 1960.

The foregoing time is extended by provisions of section 25663a which provided and provide: "If any taxpayer agrees with the United States Commissioner of Internal Revenue for an extension, or renewals thereof, of the period for proposing and assessing deficiencies in federal income tax for any year, the period for mailing notices of proposed deficiency tax for such year shall be four years after the return was filed or six months after the date of the expiration of the agreed period for assessing deficiencies in federal income tax, whichever period expires the later."

In addition, the code contains a special time limit for adjustments resulting from changes or corrections required in connection with the taxpayer's federal income tax return. Section 25674 provides: "If a taxpayer is required to report a change or correction by the Commissioner of Internal Revenue or other officer of the United States or other competent authority or to file an amended return as required by Section 25432 and does report such change or files such return, *a notice of proposed* deficiency *assessment* resulting from such adjustments may be *mailed to the taxpayer* within six months from the date such notice or amended return is filed with the Franchise Tax Board by the taxpayer, or within the period provided in Sections 25663 and 25663c, whichever period expires the later." (Prior to amendment by Stats. 1959, ch. 273, § 7, p. 2177, effective May 4, 1959, the underlined portion of the statute read *"any* deficiency resulting from such adjustments may be *assessed* within six months etc.") Section 25432 requires the taxpayer to report within 90 days to the Franchise Tax Board any change or correction affecting his federal income tax whether imposed by the government, or evidenced by an amended return. Failure to do so extends the time to assess a deficiency four years from the time the change or correction is reported to or filed with the federal government (§ 25673).

The taxpayer admittedly agreed with the United States Commissioner of Internal Revenue that the time within which he could assess a deficiency in federal income tax for the years in questions here would be extended to June 30, 1963. It also agreed with the board that it might propose additional assessments of California franchise taxes for the income years ending January 31, 1954, 1955 and 1956 through December 31, 1960. (See § 25663b.)

■ On June 30, 1960 the board, as a result of an audit of the tax-

payer's books and records for the income years ending January 31, 1955, 1956 and 1957, sent the taxpayer notices of additional taxes it proposed to assess for each of those years. These notices made the property in transit adjustment, which has been discussed in the first part of this opinion, together with other adjustments not involved in this litigation. Each notice recited, "The audit of this income year has not been completed. Additional adjustments may be proposed, prior to the running of the statute of limitations, to reflect applicable changes due to audit of your Federal return by the Director of Internal Revenue." The taxpayer agrees that the deficiencies reflected in these notices were timely assessed, and its sole objection to them in these proceedings is to the method of allocation of income which has been reviewed.

In January 1961, in the course of an audit of earlier years, the board's auditors found an error affecting the numerator of the property-factor fraction of the apportionment formula. A re-examination revealed the same error for the income years ending January 31, 1955, 1956 and 1957. As a result notices of proposed assessments of additional taxes for each of those years was mailed on May 2, 1961. By that date the extension of time running to December 31, 1960, for the years ending January 31, 1955 and 1956 had expired. Although the four-year period contemplated by section 25663 had run since April 15, 1957 when the return involving the income year ending January 31, 1957 should have been filed, the stipulated facts indicate that the return had in fact been filed less than four years before.

The taxpayer attacks each of these assessments on the ground that there having been one audit and notice of proposed deficiency, from which the taxpayer had commenced to pursue its administrative remedies, there could not be another audit and assessment except such as might be permitted for adjustments necessitated by changes made in the federal income tax returns. (See §§ 25432, 25663a and 25674.) The board asserts that these contentions may not be entertained because they were not included within the taxpayer's claims for refund. Section 26102 limits the taxpayer's action to "the grounds set forth in its claim for refund." (*Richfield Oil Corp.* v. *State Board of Equalization* (1946) 329 U.S. 69, 73 [91 L.Ed. 80, 87, 67 S.Ct. 156]; and see *Richfield Oil Corp.* v. *Franchise Tax Board* (1959) 169 Cal.App.2d 331, 338-339 [337 P.2d 237].) Examination of the claims fails to reveal express mention of these contentions.[8] Nevertheless, because they are intertwined with the

---

[8]The claims state: "The assessment was barred by the statute of limitations. The assessment was not made within the statutory four year period after the return was filed. The taxpayer had not given the Franchise Tax Board an extension of the statute of limitations. The extension of the statute of limitations given the federal

taxpayer's arguments on the various limitation provisions, and since they have been answered by the board, they will be considered.

Section 25661 provides: "As soon as practicable after the return is filed, the Franchise Tax Board shall examine it and shall determine the correct amount of the tax." The taxpayer asserts that the effect of this statute is to introduce a new limitation on the power to assess a deficiency, that is that the board cannot delay examining the return and conducting an audit to suit its own convenience, or in order to audit several years at one time. (See *Commonwealth* v. *Safe Harbor Water Power Corp.* (1966) 419 Pa. 497, 423 Pa. 101, 106-107 [223 A.2d 223, 225-226].)

Section 25662 provides: "If the Franchise Tax Board determines that the tax disclosed by the original return is less than the tax disclosed by its examination it shall mail notice or notices to the taxpayer of the additional tax proposed to be assessed. Each notice shall set forth the reasons for the proposed additional assessment and the details of the computation thereof." The taxpayer concedes that this section contemplates that more than one notice of additional tax proposed to be assessed may issue. It contends, however, that statutory history demonstrates that the plurality of notices contemplated by the statute as it now reads is merely to afford a right to a second notice when adjustment is necessary because of changes in the federal income tax returns. Section 25 of the Bank and Corporation Franchise Tax Act, as amended in 1939 (Stats. 1939, ch. 1050, § 14, p. 2962), contained the provisions comparable to section 25662. It referred to "notice" in the singular. In 1943 (Stats. 1943, ch. 37, § 14, p. 203 and ch. 352, § 17, p. 1453) the provisions were amended to read substantially as at present. At the same time provisions similar to those now found in section 25663a, as set forth above, were added to the statute.

Although the history supports the taxpayer's argument it is not necessary to give the code provisions such a limited meaning. Sections 25661 and 25662, and the precursor provisions, appear to refer to a deficiency which is discovered from an "examination" of the return. Section 26423[9] gives

_____

Internal Revenue Service did not operate to extend the statute of limitations for making adjustments different from those made by the Internal Revenue Service. Sec. 25663(a) does not have the effect of extending the statute of limitations generally when an extension has been given the Internal Revenue Service, but extends it only for the purposes of making those adjustments which correspond to those made by the federal Internal Revenue Service. If the Statute operated to extend the statute of limitations for state purposes generally, so as to permit adjustments in the allocation factor to be made merely because a federal waiver had been given, the statute would be unconstitutional."

[9]Section 26423 provides: "The Franchise Tax Board, for the purposes of administering its duties under this part, shall have the power to examine any books, papers, records, or memoranda, bearing upon the matters required to be included in the return of any taxpayer under this part. The Franchise Tax Board may also require

the board broad powers to examine the taxpayer's books and records and to conduct investigations. It should not be permitted to harass the taxpayer, but the discovery of an error permeating several years in the audit for one year should not be uncorrectable because an audit for one of those years had been completed without detection of that error. "The additional tax . . . was a continuing liability" and could be collected at any time within the period prescribed by the Legislature. (See *Edison California Stores, Inc.* v. *McColgan, supra,* 30 Cal.2d 472, 484.)

The fact that the taxpayer had undertaken to protest the admittedly timely assessments of June 1960 did not bar the board from further action. There had been no final determination of the liability for the years involved. The notices of action dated March 30, 1961, with respect to the taxpayer's protests, did not become final because the taxpayer did not agree to them, and appealed to the State Board of Equalization before they would have become final by operation of law. It is unnecessary, therefore, to determine what affect a final settlement of the taxpayer's liability for the three years in question would have had. (Cf. *Pope Estate Co.* v. *Johnson* (1941) 43 Cal.2d 170, 176 [110 P.2d 481]; and see § 26424, and *Magma Copper Co.* v. *Arizona State Tax Comr.* (1948) 67 Ariz. 77, 85-86 [191 P.2d 169, 174-175].)

It is clear, therefore, that there was no inhibition precluding the further assessment of additional taxes for the income year ending January 31, 1957. The taxpayer insists that the four-year statute bars the assessment of the additional taxes for the two prior years. The board relies upon the provisions of section 25663a which extend the limitation period when there is an extension agreement covering the assessment of federal income taxes. The taxpayer asserts that extension of the period for the assessment of state taxes should be construed as limited to such additional taxes as may become due by reason of adjustments necessitated by changes in the federal tax returns.[10] It points out that it is not necessary to await the federal audit to determine those questions which are not dependent on that audit, and that in fact the board by making the assessments of June

---

the attendance of the taxpayer or of any other person having knowledge in the premises and may take testimony and require material proof for its information and administer oaths to carry out the provisions of this section. The Franchise Tax Board may issue subpenas or subpenas duces tecum, which subpenas must be signed by any member of the Franchise Tax Board and may be served on any person for any purpose."

[10]The board acknowledges that the extension of the time for assessment provided for in section 25674 (see also, §§ 25432 and 25673) is limited to such adjustments as may result from changes and corrections in the federal tax returned. (See *Commonwealth* v. *Safe Harbor Water Power Corp., supra,* 423 Pa. 101, 107 [223 A.2d 223, 226-227]; and *People* v. *Graves* (1935) 267 N.Y. 149, 155 [196 N.E. 5, 6-7].)

30, 1960, and the questioned assessment of May 2, 1961, had demonstrated that it was unnecessary to await the results of the federal audit.[11] The taxpayer also relies on those precedents which limit the scope of reassessment under provisions similar to section 25432 (see fn. 10 above).

In *Richfield Oil Corp.* v. *Franchise Tax Board, supra,* 169 Cal.App.2d 331, the court upheld the constitutionality of the provisions of section 25663a against attack on the theory that it was "unreasonable and arbitrary to give the benefit of a shorter period in which deficiencies may be assessed to a taxpayer who does not agree to an extension in respect to his federal taxes than to one who does," and against the contention that it was a special law extending the time for the collection of taxes (169 Cal. App.2d at pp. 335-338). The taxpayer also asserted that the statute would be unconstitutional if it were "construed as permitting additional tax on any basis in addition to federal changes." . . . The court refused to consider that point because the stipulated facts failed to reflect that any such additional tax had been assessed, and because the issue had not been raised in the trial court (*id.,* at pp. 338-339).

In *RKO Teleradio Pictures, Inc.* v. *Franchise Tax Board, supra,* 246 Cal.App.2d 812, the matter was reviewed. The opinion states, "But respondent argues that the board may only assert a deficiency based upon a change in income made after federal audit, and that since the impact of federal adjustments here had but a slight effect on the state tax, section 25663a cannot apply. We find no merit in this argument, nor does respondent cite any persuasive authority in support of such a restrictive interpretation. The statute, by reasonable inference, contemplates the use by state tax authorities of all information gained through federal tax audits, so that the state, and its taxpayers as a whole, may thereby be saved both time and expense in the administration of the state's tax laws. Moreover, by state use of federal tax information, the interests of the particular taxpayer whose return is in question are served, in that he, too, is saved the time and expense of a dual audit of his personal and business affairs, and may in some cases ascertain errors in his state tax return sufficient to justify a claim for refund. [Citation.] Here the board was in no position to issue its notices of assessment until after completion of the federal audit, because federal adjustments in such items as payroll and property depreciation might readily affect factors of payroll and

---

[11]The taxpayer acknowledges that further notices of additional taxes assessed for the three earlier years dated January 4, 1962 were timely as being within six months after its federal liability was finally determined (see §§ 25663a and 25674). It has no objection to the adjustments themselves, which were necessitated by changes and corrections in the federal return, but does object to the fact that the adjustments were made to the allegedly improper reassessments of May 2, 1961.

property used in the board's formula. To require the board to make its assessments while federal audit is pending would nullify the provisions of section 25663a and deprive both the state and the taxpayer of the beneficial effects of the statute." (246 Cal.App.2d at p. 820.)

The taxpayer requests that the *RKO* case be overruled because it is predicated upon false hypotheses as is indicated by the facts in this case. It asserts that since there is no saving in time or expense to the state or to the taxpayer, and since the board was in fact in a position to, and did issue its notices of assessment, there is no reason to open the floodgates to permit correction of all errors. The fact that in this particular case the board did not exercise its prerogative to conduct one post-federal audit, does not lessen the force of the reasoning applied by the court in *RKO*. The Legislature has demonstrated in section 25674 that it knew how to limit a reopening to "any deficiency resulting from such adjustments" as may be required by changes or corrections in the federal return. The absence of similar language in section 25663a suggests a different intent, and leads to the conclusion that the established law should be applied.

It is concluded that the May 2, 1961 notices of proposed deficiency tax for the income years ending January 31, 1955 and 1956 were timely within the limitation period as extended by the provisions of section 25663a.

On November 20, 1961 the taxpayer effected a final settlement with the Commissioner of Internal Revenue for the income years ending January 31, 1955, 1956, 1957 and 1958. On December 8, 1961 it mailed notification of this settlement to the board (see § 25432) and the board by notices dated January 4, 1962 made prompt adjustment of the proposed additional taxes for those years as necessitated by adjustments in the federal settlement.

■ In November and December of 1962 the board examined the taxpayer's books and records for the income years ending January 31, 1958, 1959 and 1960. On January 14, 1963, the board sent the taxpayer notices of proposed additional taxes for each of those three years. The assessments for 1959 and 1960 and subsequent further assessments for those years by notices dated March 19, 1963 are all admittedly timely and are not affected by the questions discussed in this part of the opinion.

The notice for 1958, however, was mailed more than four years after the return for that year was filed and was barred by the provisions of section 25663. The board adverts to the taxpayer's agreement with the federal taxing authority which extends the period for assessing those taxes to June 30, 1963, and claims that under the provisions of section

25663a it had until "six months after the date of the expiration of the agreed period for assessing deficiencies in federal income tax," or until December 31, 1963, within which to send the notice of the proposed deficiency assessment for 1958.

The taxpayer's argument that the deficiency, if assessed under the extension of time provided by section 25663a should be limited to the amount resulting from adjustments to the federal return has been examined and rejected above, as has also its general argument predicated on promptitude under the provisions of section 25661. This assessment, however, was made more than six months after the taxpayer notified the state of the settlement of its federal income tax liability for 1958. The taxpayer contends that any assessment for the income year ending 1958 was barred after June 8, 1962.

Under the provisions of section 25674 the time within which to assess any deficiency resulting from adjustments to a taxpayer's federal return expires at the later of six months from the date notice of such adjustment is filed with the state taxing authorities, or at the expiration of the four-year period provided by section 25663, or at the expiration of the six-year period provided by section 25663c. The taxpayer urges that the failure to include reference to section 25663a in section 25674 demonstrates that the Legislature intended that the six-month limitation of section 25674 should govern in all cases where the taxpayer gives notice of federal changes pursuant to section 25432.

This argument will not bear analysis.

In the first place the provisions of sections 25432, 25763 and 25764 were separately adopted and reflect a plan of reporting and assessing additional franchise taxes which is to apply to all taxpayers, regardless of whether the taxpayer may or may not be one of a class who, through executing a federal extension agreement, falls within the provisions of section 25663.[12] Since these provisions were general in scope, there was

---

[12]As has been noted above, the provisions now found in section 25663a were added to the Bank and Corporation Franchise Tax Act in 1943. It was not until 1947 (Stats. 1947, ch. 1317, § 2, p. 2859) that provisions were added to expressly require all taxpayers to file with the state authorities a supplementary return when one was required by federal authorities. (Bank and Corp. Franchise Tax Act, § 8.2, subd. (b); and see Rev. & Tax. Code, former § 25431.) In 1951 (Stats. 1951, ch. 404, §§ 3 and 4, p. 1370) the requirements were redrafted to read substantially as now found in section 25432, and section 25673 was added to extend for four years the time to make a state deficiency assessment resulting from a federal adjustment. In 1953 (Stats. 1953, ch. 586, § 1, p. 1834) provisions similar to those now found in section 25674 were first added to the code. It appears obvious that these provisions were to make it clear that the taxpayer who complied with the requirements of section 25432 would be protected from an unqualified reopening of the statutory period.

no reason to refer to the limitation applicable to those particular taxpayers embraced within the provisions of section 25663a.

Secondly, the provisions of section 25673 and 25674 limit the deficiencies which may be assessed within the extended period to such deficiencies as may result from the change, correction, or amendment of the taxpayer's federal return (see fn. 10 above). On the other hand, the provisions of section 25663 do not so limit the type of deficiency which may be assessed, and have been construed, as demonstrated above, to permit the assessment of deficiencies other than those predicated upon the federal adjustment.

Furthermore, it may be pointed out that when a taxpayer agrees with the federal government that the time for determination of his federal tax may be extended it is a volitional act, indicating that, regardless of its motivation, the taxpayer is willing to delay such determination until the date agreed upon. Moreover, since 1943 a California corporate taxpayer has known that the state, under the provisions now found in section 25663a, would be able to contend that the time within which the state tax could be determined automatically would be extended to a date six months later. The taxpayer at all times is free to negotiate with the federal government for more limited extensions, with renewals if necessary, if it is deeply concerned about the delay in effecting a final determination of its state tax liability. On the other hand, the extension provided by the operation of sections 25432 and 25674 is nonvolitional. The taxpayer is subjected to the possibility of the assessment of additional taxes by the exigencies of the situation. It is, therefore, proper that the scope of the new inquiry be limited to additional taxes which may be due solely by reason of the federal adjustments (see fn. 10 *supra*).

It is concluded that the provisions of section 25764 do not apply to limit the period for assessment or the type of deficiency which may be assessed when the time is extended under section 25663a.

A more cogent argument is predicated on the proposition that once the federal tax has been finally settled the agreement with the federal authorities becomes *functus officio*. In other words "the date of the expiration of the agreed period for assessing deficiencies in federal income tax," as referred to in section 25663a, is the earlier of the actual date in the agreement, or the date on which the taxpayer actually effectuates a final settlement of its federal return. Such an interpretation would be consistent with the policies evidenced in sections 25661 and 25674 (see also fn. 10 above) for prompt assessment, and for limiting the time within which assessments may be made against the taxpayer who reports changes.

Moreover, once the federal assessement has been finally determined and the state has had a reasonable time to make its audit, the reasons advanced for extending the state's review as outlined in the *RKO* case (246 Cal.App.2d 812, *supra*) and the *Richfield Oil* case (169 Cal.App.2d 331, *supra*) have been satisfied. In the latter case the court observed, "Unquestionably, the use of the federal audits results in great savings to the State of California and the taxpayers of the state. It is a fair inference that not only does the use of the federal audits bring about fewer detailed audits by California, but taxpayers are spared the inconvenience and expense of having two detailed audits of their books at their place of business." (169 Cal.App.2d at p. 337; and see 246 Cal.App.2d at p. 820.) If the federal audit obviates the need for a detailed audit there would be no burden in requiring the state to make adjustments promptly. This was in fact done by the state with respect to the 1958 return by the notice of proposed deficiency dated January 4, 1962, within a month after the taxpayer had given notice of the federal adjustment. If a further detailed audit is necessary, and the taxpayer is not to be relieved of a dual audit, it would not be unreasonable to require the state to develop those matters dependent on its audit prior to or simultaneous with the federal audit, or at the latest within six months after the federal audit has resulted in a final determination of the taxpayer's liability to the federal government. If a six-month period would inconvenience both the taxpayer and the state because grouping of returns and audits is preferable, the parties are free to negotiate for an extension agreement. (See Rev. & Tax. Code, § 25663b.)

The foregoing considerations demonstrate the propriety of a policy limiting the time for assessment of a deficiency to within six months of a final settlement with the federal government, despite the existence of a federal extension agreement with an original later date of expiration. Nevertheless, the statute and decisions do not permit this interpretation. The foregoing arguments more appropriately should be addressed to the Legislature. In the first place the statute does not refer merely to "the agreed period for assessing deficiencies in federal income tax." If it did the period might terminate with such assessment. The statute expressly refers to "the date of the expiration of the agreed period." The date of expiration of the agreed period is something which can be ascertained when the agreement is made and be definitely carried forward by the state taxing authorities. There is no provision in section 25663a for reporting any final adjustment to the state, or for shortening the period for assessment by reason of such notice. The provisions for such reporting were adopted later and in their application to all taxpayers limit the scope of the deficiencies which may be assessed (see fn. 12 and text following, above). The decisions upholding the validity of and interpreting the provision of section

25663a, while not discussing or abridging the limitation sought here, clearly imply that the extension of the period for state assessment granted by the section was unqualified. (See *RKO Teleradio Pictures, Inc.* v. *Franchise Tax Board, supra,* 246 Cal.App.2d 812, 820; and *Richfield Oil Corp.* v. *Franchise Tax Board, supra,* 169 Cal.App.2d 331, 337.) It would be normal for the state to execute its administraiton of the franchise tax law on the premise that the provisions of section 25663a could be taken at their face value. Finally, if this court were disposed to shorten the period as suggested it would be reluctant to terminate the period six months from the date of the final settlement without any provision for notice to the state. Any attempt to limit the period to six months after notice to the state of a final settlement would necessitate an interpolation in the language of the statute which more fittingly should be the product of legislative action.

It is concluded that the deficiency assessment proposed on January 14, 1963 for the income year ending January 31, 1958 was timely made under the provisions of section 25663a as it reads and has been interpreted.

The judgment as rendered should be affirmed on the issues it determined. Overlooked in the judgment was a portion of the stipulation which provided for a minor refund to the taxpayer which was to have been incorporated in any judgment of the lower court. Since the taxpayer failed to direct the trial court's attention to this oversight in the judgment of the lower court, no costs should be recovered for the reversal thereby necessitated.

The judgment is affirmed with respect to those issues resolved by the lower court, it is nevertheless set aside and the case is remanded solely for determination of the amount due the taxpayer pursuant to the provisions of paragraph 22 of the stipulation of facts, and for correction of the judgment accordingly. Let respondent recover its costs on appeal.

Molinari, P. J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 28, 1970.